# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT CHATTANOOGA

| | |
|---|---|
| BRENDA THOMAS and <br> GARY THOMAS <br><br> Plaintiff, <br><br> v. <br><br> THE FRESH MARKET, INC. and <br> DDR OVERLOOK HAMILTON, LLC <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) No. 1:15-cv-323 <br> ) <br> ) Mag. Judge Christopher H. Steger <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM OPINION

**I.     Introduction**

Plaintiff Brenda Thomas (Plaintiff or "Ms. Thomas") injured her shoulder when the mobility scooter she was driving tipped over, and she fell to the pavement. Plaintiff had been shopping at a Chattanooga strip mall and was driving her mobility scooter on a sidewalk from Hobby Lobby to Fresh Market when she encountered a stack of firewood that blocked the way to the store entrance. The firewood had been stacked on the sidewalk by Fresh Market employees. To get around the firewood, Plaintiff had to leave the sidewalk on her mobility scooter and cross a speed bump in the parking lot. As she attempted to drive over the speed bump, her mobility scooter tipped over and Plaintiff fell to the ground.

Plaintiff has brought claims of simple negligence and negligence *per se* against The Fresh Market Inc. ("Fresh Market")—for blocking the sidewalk with firewood—and against the strip mall developer and owner, DDR Overlook Hamilton LLC ("DDR") for construction of the speed bump. Plaintiff's husband, Gary Thomas ("Mr. Thomas"), asserts a loss of consortium claim against both Defendants. Fresh Market and DDR have moved for summary judgment on all claims

[Docs. 42 and 46]. For reasons that follow, Fresh Market's summary judgment motion [Doc. 46] is **GRANTED IN PART** and **DENIED IN PART**, and DDR's summary judgment motion [doc. 42] is **GRANTED**.

## II. Facts

Plaintiffs, Mr. and Ms. Thomas, live in Bridgeport, Alabama [Doc. 68-1, Dep. of Brenda Thomas, P. 12, L. 12-16]. Ms. Thomas has lumbar degenerative disc disease. Walking long distances hurts her back, so she uses a mobility scooter[1] when shopping. She is able to walk short distances. Ms. Thomas' accident occurred at the Overlook at Hamilton Plaza Shopping Center (the "Overlook strip mall") located in Chattanooga, Tennessee. The Overlook strip mall was owned by DDR; Fresh Market was a tenant.

On December 10, 2014, Mr. and Ms. Thomas went to the Overlook strip mall with their daughter for Christmas shopping. Ms. Thomas and her daughter left Hobby Lobby to go to Fresh Market. They traveled on a sidewalk connecting the two stores—Ms. Thomas on her mobility scooter; her daughter walking. The entrances to Hobby Lobby and Fresh Market are fronted by a parking lot. The sidewalk allows store patrons to move from one store to another without entering the parking lot. Travel lanes for cars in the parking lot parallel the sidewalk in front of the Overlook strip mall [*See* Doc. 68-3, photograph of entrances to Hobby Lobby and Fresh Market; Docs. 68-5 and 68-6, photographs of travel lanes]. A speed bump is located in the parking lot across the two travel lanes immediately in front of Fresh Market. It is perpendicular to the sidewalk and extends from the sidewalk curb—across the two travel lanes—to the base of a light pole adjacent to the first parking space on the far side of the travel lanes [*See* Docs. 68-5 and 68-6,

---

[1] The mobility scooter is a Pride SC73 Go-Go Sport 3-wheel.

pictures of speed bump outside the entrance of Fresh Market]. The speed bump butts up against the sidewalk curb on one end and the base of the light pole on the other. [*See Id.*].

The sidewalk curb is beveled in front of the Fresh Market entrance to permit wheelchair or mobility scooter access to and from the parking lot. As indicated, however, Ms. Thomas was attempting to reach the Fresh Market entrance from the sidewalk which runs the length of the front of the Overlook strip mall. As she got close to the Fresh Market entrance, she had to pass through a space bounded by a large, concrete support pillar on one side and the front exterior wall of Fresh Market on the other. [*See* Doc. 68-3, 68-4, photographs of Fresh Market entry and sidewalk]. In that space, Fresh Market had stacked firewood on the sidewalk against the front exterior wall, roughly opposite the support pillar. Consequently, the sidewalk passageway between the front exterior wall and the support pillar was partially obstructed [*See* Doc. 68-4, photograph of sidewalk with stacked firewood]. With 24 feet yet to go before she reached the Fresh Market entrance, Ms. Thomas' way was blocked.[2]

When Ms. Thomas concluded that the sidewalk was blocked for scooter travel to the Fresh Market entrance, her daughter offered to drive the scooter into the parking lot and over the speed bump for her. In her deposition, Ms. Thomas admitted that she probably could have accepted her daughter's offer and walked the remaining short distance to the Fresh Market entrance. She declined, however, because she was already on the scooter and thought she could negotiate the speed bump herself. Consequently, Ms. Thomas turned the scooter around on the sidewalk, motored to a nearby curb ramp [*see* Doc. 68-4, photograph including ramp], and entered the

---

[2] The sidewalk pavement extends on the other side of the pillar next to the curb, but there is no proof before the Court as to whether this portion of the pavement was wide enough to accommodate Ms. Thomas' scooter [*See* Doc. 68-4, photograph of pillar and pavement]. Ms. Thomas testified she did not consider taking her scooter on that section of pavement, and she did not consider that section to be part of the sidewalk. Common sense suggests that operating a three-wheeled scooter immediately next to—and parallel with—a curb could create significant tipping potential. In any event, there is no proof before the Court that this was an option for Ms. Thomas, and any argument to that effect would necessarily involve a genuine issue of material fact.

parking lot travel lanes paralleling the sidewalk. Driving toward the Fresh Market entrance now required Ms. Thomas to negotiate the speed bump traversing the travel lanes. As Ms. Thomas attempted to drive over the speed bump, her scooter overturned and fell on her, resulting in an injury to her shoulder

In her deposition, Ms. Thomas admitted that she had read the consumer safety guide for her mobility scooter which provides the following warning: "Warning! Even though your scooter may be capable of handling greater obstacles, we recommend you do not attempt to negotiate a curb that has a height greater than 2 in. (5 cm). Doing so could cause instability in your scooter." [Doc. 56-1, Ex. 6 to B. Thomas dep., Consumer Safety Guide at 13, Page ID # 646].[3]

With respect to the Defendants' role in the above-described incident, the Court also notes that, at the time of the scooter accident, Fresh Market and DDR were parties to a lease agreement which contained the following relevant provision:

> TENANT shall have the right to… (b) erect such display racks as to adequately display the foregoing so long as such display racks (i) are located in such a place so as not to unreasonably obstruct the normal flow of pedestrian traffic along and across the sidewalk immediately in front of TENANT'S store and (ii) shall not unreasonably hinder pedestrian access between TENANT'S store and any other co-tenants within the shopping center….

[Doc. 63, Lease, Section 4.1].

### III. Discussion

#### A. Standard of Review

Fed. R. Civ. P. 56(c) provides that summary judgment will be rendered if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to show that no genuine issue of material fact exists, and the Court

---

[3] Page ID # is the sequential number assigned to each page of each document electronically filed in the Court record and is found in the bottom right corner of each page.

must view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.*, 105 F.3d 279, 280-81 (6th Cir. 1997); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The moving party may satisfy its burden by presenting affirmative evidence that negates an element of the nonmoving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-35 (1985); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). There are "no express or implied requirements in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim;" it is enough for the movant to "point[ ] out" an absence of evidence on an essential element of the non-movant's claim. *Celotex*, 477 U.S. at 323-25; *see also Harvey v. Campbell Cnty, Tenn.,* 453 Fed. Appx. 557, 560 (May 10, 2011).

Once the moving party has fulfilled his initial burden under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party is required to "go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324-25; *see also 60 Ivy Street*, 822 F.2d at 1435. The moving party is entitled to summary judgment if the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Celotex*, 477 U.S. at 323; *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *60 Ivy Street*, 822 F.2d at 1435-36.

In a diversity jurisdiction case such as this one, the Court must apply the substantive law of the forum state. *Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2012); *Pennington v. State Farm Mut. Auto. Ins. Co.,* 553 F.3d 447, 450 (6th Cir. 2009) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). In doing so, the court must "follow the decisions of the state's highest court when that court has addressed the relevant issue." *Kepley,* 715 F.3d at 972 (quoting *Savedoff v. Access Grp., Inc.,* 524 F.3d 754, 762 (6th Cir. 2008)). Accordingly, the Court will apply Tennessee law to the substantive issues in this case.

  **B.**   **Analysis**

    **1.**   **Negligence *Per Se* Claim Against Fresh Market**

In her Complaint, Plaintiff Brenda Thomas alleges Fresh Market was negligent *per se* by blocking the sidewalk with firewood and failing to offer an accessible route from Hobby Lobby to Fresh Market for disabled persons in violation of Tenn. Code Ann. § 68-120-202, as well as "[t]he applicable building code." [Doc. 1, Complaint, Count I]. Plaintiff asserts that these violations caused her injury because she was "required to travel in the parking lot and over a speed bump to get to the only entrance to Fresh Market from Hobby Lobby." [*Id.* ¶ 28]. Plaintiffs do not identify the specific "applicable building code" referenced in this count. The Court notes that this claim against Fresh Market is not based on the placement or construction of the speed bump. [*See* Doc. 1, Complaint, Count I].

The Tennessee Supreme Court has summarized the doctrine of negligence *per se* as follows:

> The standard of conduct expected of a reasonable person may be prescribed in a statute and, consequently, a violation of the statute may be deemed to be negligence *per se*. When a statute provides that under certain circumstances particular acts shall or shall not be done, it may be interpreted as fixing a standard of care . . . from which it is negligence to deviate. In order to establish negligence *per se*, it must be shown that the statute violated was designed to impose a duty or prohibit an act for

the benefit of a person or the public. It must also be established that the injured party was within the class of persons that the statute was meant to protect.

*Estate of French v. Stratford House*, 333 S.W.3d 546, 560-61 (6th Cir. 2011), *superseded on other grounds by* Tennessee Civil Justice Act of 2011, ch. 510, 2011 Tenn. Pub. Acts 1505 (codified at Tenn. Code Ann. § 29-26-101 *et seq.*) (quoting *Cook ex rel. Uithoven v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 937 (Tenn.1994)).

A negligence *per se* claim may be based on violations of regulations and ordinances as well as statutes. *Estate of French*, 333 S.W.3d at 561. Not every violation of a statute, ordinance, or regulation constitutes negligence *per se*; "the courts must ultimately decide whether they will adopt a statutory standard to define the standard of conduct of reasonable persons in specific circumstances." *Id.* (quoting *Whaley v. Perkins*, 197 S.W.3d 665, 673 (Tenn. 2006)). Further, the statute, regulation, or ordinance must provide specific standards in order to provide the basis of a negligence *per se* claim. *Rains v. Bend of the River*, 124 S.W.3d 580, 590 (Tenn. Ct. App. 2003) ("To trigger the doctrine [of negligence *per se*], the statute must establish a specific standard of conduct.")[4]

In the instant case, Ms. Thomas bases her negligence *per se* claims against Fresh Market on Tenn. Code Ann. § 68-120-202 and "[t]he applicable building code." [*See* Doc. 1, Complaint ¶ 29].[5] Tenn. Code Ann. § 68-120-202 states, "[i]t is declared to be the policy of the state of Tennessee to make all public buildings accessible to and functional for persons who have a physical disability." The Court finds this statement of policy to be too vague and general to define

---

[4] *See also Whaley*, 197 S.W.3d at 672 ("When a statute provides that under certain circumstances particular acts shall or shall not be done, it may be interpreted as fixing a standard of care . . . from which it is negligence to deviate.") (quoting *Prosser and Keeton on Torts* § 36, p. 220 (5th ed.1984)); *Estate of French*, 333 S.W. 3d at 561 (finding "[t]he federal regulations simply too vague and general to constitute a standard of care by which a jury, or for that matter a court, can effectively judge the acts or omissions of health care providers and nursing home operators.")
[5] Plaintiff specifically disavows relying on Tenn. Code Ann. § 68-120-204 as the basis for her negligence per se claim against Fresh Market. *See* Plaintiffs' Response, Doc. 68 at 7, Page ID # 842].

the standard of conduct required of Fresh Market in the circumstances of this case. Tenn. Code Ann. § 68-120-202 cannot be the basis for a negligence *per se* claim against Fresh Market.

Ms. Thomas' negligence *per se* claim against Fresh Market is also based on "[t]he applicable building code, which adopts the 1991 North Carolina State Handicapped Code, requir[ing] that the accessible entrance 'connect to the accessible route leading to public transportation stops, parking areas and walkways between primary entrances to other buildings in a given complex.'" [Doc. 1, Complaint ¶ 30]. Fresh Market correctly counters that "Plaintiffs do not provide citation to any building code provision they allege Fresh Market violated . . . ." [Doc. 56, Fresh Market's memorandum in support of motion for summary judgment at 11, Page ID # 596]. Nor do Plaintiffs identify the "applicable building code" in their response to Fresh Market's motion for summary judgment. Plaintiffs simply state, "the applicable building code in this matter adopts the 1991 North Carolina State Building Code." [Doc. 68, Plaintiffs' Response at 7, Page ID # 842]. Further, a copy of this building code is not attached as an exhibit to either the complaint or Plaintiffs' response. Plaintiffs cannot base a negligence *per se* claim on an unspecified building code which purportedly adopts a more specific building code. Consequently, Plaintiffs' claim alleging negligence *per se* against Fresh Market shall be dismissed with prejudice.

### 2. Negligence *Per Se* Claim Against DDR

Ms. Thomas alleges DDR was negligent *per se* "by placing a speed bump in the parking lot that extended from the first parking spaces to the curb of the sidewalk in front of the building." [Doc. 1, Complaint ¶ 40]. According to Ms. Thomas, the placement of this speed bump caused the entrance to Fresh Market to be inaccessible to disabled persons in violation of "Tennessee statutes and the applicable building codes regarding accessibility to buildings." [*Id.* ¶ 44]. As with the negligence *per se* claim against Fresh Market, Ms. Thomas references specifically Tenn.

Code Ann. § 68-120-202 in this count. [*Id.* ¶ 42]. In her response to DDR's motion for summary judgment, she also asserts, "the applicable building code in this matter adopts the 1991 North Carolina State Building Code." [Doc. 64, Plaintiff's Response at 7, Page ID # 789]. The "applicable building code" is not identified. For the same reasons that the Court granted Fresh Market's motion for summary judgment as to the negligence *per se* claim, the Court will also grant DDR's motion for summary judgment as to the negligence *per se* claim.

### 3. Negligence Claim Against Fresh Market

The gravamen of this case is a premises liability claim against Fresh Market. Plaintiff alleges Fresh Market stacked firewood on the sidewalk thereby obstructing her safe entry into Fresh Market. As a result, Ms. Thomas asserts, Fresh Market forced her to use an unsafe, alternative route to enter Fresh Market; she entered the travel lanes with her scooter; she attempted to cross over a speed bump; the scooter tipped over when crossing the speed bump; and Ms. Thomas fell from the scooter and sustained serious injuries to her shoulder.

"Business proprietors are not the insurers of their patrons' safety." *Parker v. Holiday Hospital Franchising, Inc.*, 446 S.W.3d 341, 350 (Tenn. 2014) (quoting *Blair v. West Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004)). However, business proprietors must exercise due care under all the circumstances. *Parker*, 446 S.W.3d at 350, *see also*, *Eaton v. McLain*, 891 S.W.2d 587, 593-94 (Tenn. 1994) (holding business proprietors have a general "duty to maintain the premises in a reasonably safe and suitable condition.") Persons seeking to bring a claim based on premises liability must prove the elements of a negligence claim. *Parker*, 446 S.W.3d at 350. To state a claim for negligence under Tennessee law, a plaintiff must allege: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant breaching that duty; (3) an injury or loss to

the plaintiff; (4) causation in fact; and (5) proximate or legal cause. *Borne v. Celadon Trucking Servs., Inc.*, 532 S.W.3d 274, 299 (Tenn. 2017).

In addition to these elements, the plaintiff in a premises liability action must also prove either "(1) that the premises owner or operator caused the condition, or (2) if not, 'that the owner or operator had actual or constructive notice that the condition existed prior to the accident.'" *Corley v. Wal-Mart Stores East, LP*, 637 Fed. App'x. 210, 211 (6th Cir. 2016) (quoting *Blair*, 130 S.W.3d at 764); *see also Parker*, 446 S.W. 3d at 350. There is no dispute that Fresh Market caused the condition at issue in this case, *i.e.*, the stacked firewood on the sidewalk which blocked Ms. Thomas' path to Fresh Market's entrance.

Fresh Market argues it is entitled to summary judgment on this negligence claim for three reasons: (1) it did not breach a duty of care to Ms. Thomas for the condition of the sidewalk because this incident was not reasonably foreseeable; (2) it owed no duty of care to Ms. Thomas for the condition of the parking lot; and (3) if it did breach a duty of care, that breach was not the proximate cause of Ms. Thomas' fall because this incident was not foreseeable. The Court will address each argument and deny Fresh Market's motion for summary judgment as to Ms. Thomas' negligence claim.

### a) Breach of Duty of Care as to the Sidewalk

Fresh Market argues it "did not breach a duty of reasonable care by placing the firewood in front of the store because the injury sustained by Ms. Thomas was not a foreseeable risk to such action." [Doc. 56, Fresh Market's memorandum at 18, Page ID # 602]. The Court disagrees with Defendant's rationale.

"Legal duty has been defined as the legal obligation owed by a defendant to a plaintiff to conform to a reasonable person standard of care for the protection against unreasonable risks of

harm." *West v. E. Tennessee Pioneer Oil Co.*, 172 S.W.3d 545, 551 (Tenn. 2005). The Tennessee Supreme Court has explained how to analyze whether a duty in a particular set of circumstances exists:

> Our recent pronouncements concerning the duty of care in negligence cases reveal a balancing approach consistent with our prevailing principles of fairness and justice. In *McCall v. Wilder*, 913 S.W.2d 150 (Tenn.1995), we observed that "[a] risk is unreasonable and gives rise to a duty to act with due care if the foreseeable probability and gravity of harm posed by defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm." *McCall v. Wilder*, 913 S.W.2d at 153. We have also noted that several factors are to be considered in deciding whether a risk is an unreasonable one, thereby giving rise to a duty. "Those factors include *the foreseeable probability of the harm or injury occurring*; the possible magnitude of the potential harm or injury; the importance or social value of the activity engaged in by defendant; the usefulness of the conduct to defendant; the feasibility of alternative, safer conduct and the relative costs and burdens associated with that conduct; the relative usefulness of the safer conduct; and the relative safety of alternative conduct." *Id.* at 153.

*McClung v. Delta Square Ltd. P'ship*, 937 S.W.2d 891, 901 (Tenn. 1996) (emphasis added); *see also Doe v. Linder Const. Co.,* 845 S.W.2d 173, 178 (Tenn. 1992) ("If the injury which occurred could not have been reasonably foreseen, the duty of care does not arise"); *Mathern v. West,* No. E2015-02061, 2016 WL 6311283, at 10 (Tenn. Ct. App. Sept. 14, 2016) ("In analyzing duty, the court must balance the foreseeability and gravity of the potential risk of harm to a plaintiff against the burden imposed on the defendant in protecting against that harm.")

It is well established that a lessee owes a general duty of ordinary care to patrons to ensure that the approach to the lessee's business is in a reasonably safe condition. *Thompson v. Ruby Tuesday*, Case No. M2004-01869-COA-R3-CV, 2006 WL 468724, *6 (Tenn. Ct. App. Feb. 27, 2006,); *Gladman v. Revco Disc. Drug Ctrs., Inc.*, 669 S.W.2d 677, 678-79 (Tenn. Ct. App. 1984); *Roberts v. Wesleyan College*, 450 S.W.2d 21, 26 (Tenn. Ct. App. 1969). Based on the depositions,

affidavits, and exhibits presented to the Court, the Court finds there is no genuine issue of material fact as to the following matters:

- The safest route from the Hobby Lobby to the Fresh Market entrance—especially for a disabled customer using a scooter or wheelchair—included the section of sidewalk where Fresh Market had stacked firewood;

- Fresh Market controlled use of this portion of the sidewalk by employing it to sell store products; other tenants of the Overlook strip mall were not using this portion of the sidewalk for that purpose.

- Pursuant to Section 4.1 of the lease between Fresh Market and DDR in effect at the time of the incident, Fresh Market had a responsibility not to obstruct the sidewalk in the area where the firewood was stacked.

As a matter of law, the Court finds that Fresh Market owed a general duty of reasonable care to assure that the sidewalk in front of its store be free of obstacles that would prevent a pedestrian or disabled patron from accessing the store entrance without having to leave the sidewalk and venture into the parking lot. *See West*, 172 S.W.3d at 550 ("Whether the defendant owed the plaintiffs a duty of care is a question of law to be determined by the court.")

Fresh Market argues that it could not have foreseen that stacking firewood on the sidewalk near its entrance would create the specific risk that Ms. Thomas would suffer injuries caused by her scooter tipping over on the speed bump in the travel lanes. A risk is foreseeable "if a reasonable person could foresee the probability of its occurrence or if the person was on notice that the likelihood of danger to the party to whom is owed a duty is probable." *West*, 172 S.W.3d at 551 (quoting *Linder Const. Co.*, 845 S.W.2d at 178.) "[T]he plaintiff must show that the injury was a reasonably foreseeably probability, not just a remote possibility. . . ." *Linder Const. Co.*, 845 S.W.2d at 178.

The Court disagrees with Fresh Market's assertion that Plaintiff's injury was not reasonably foreseeable. Scooters for disabled and mobility-impaired patrons are ubiquitous in big box stores.

Further, parking lot travel lanes are to be used by automobiles and trucks—not by mobility scooters. A mobility scooter sharing a travel lane with cars for any purpose other than to cross the travel lanes and reach the sidewalk is inherently dangerous to the person on the mobility scooter. Likewise, speed bumps are designed to reduce the speed of cars to ensure the safety of shoppers trying to reach the store entrances. A speed bump is not intended to slow mobility scooters, and, in fact, presents a significant obstacle. Fresh Market stacked firewood on the sidewalk in front of its store in such a way that it obstructed travel to the front entrance of its store for any customer approaching from the direction of the adjacent Hobby Lobby. It was reasonably foreseeable that a scooter-driving customer approaching from that direction would—upon finding the sidewalk blocked—leave the sidewalk; enter the parking lot; drive in the travel lanes parallel with the sidewalk to reach the store entrance; and drive over the speed bump which completely traversed both travel lanes. Further, it was foreseeable that a mobility scooter (or wheelchair) could tip over if driven over the speed bump. In short, it is difficult to imagine that the sequence of events that led to Ms. Thomas' injury was not foreseen by Fresh Market personnel.

The Court finds that the risk of injury was foreseeable by Fresh Market; the magnitude of the potential harm was significant; the feasibility of alternative, safer conduct by Fresh Market was apparent; and the costs and burden of taking alternative steps to avoid the risk were minimal. Had Fresh Market simply stacked the firewood in a different place so that it did not block the sidewalk, the risk would have been avoided.

That Fresh Market owed a duty to Ms. Thomas does not necessarily mean Fresh Market breached that duty. *See West*, 172 S.W.3d at 552 (holding that after the court finds defendant owed plaintiff a duty, plaintiff must still prove breach of that duty, injury or loss, cause in fact, and proximate cause.) Fresh Market asserts it did not breach a duty of care owed to Ms. Thomas

because she could have gotten around the stack of firewood on her mobility scooter by using the pavement between the support pillar and the sidewalk curb; however, Fresh Market provided no evidence to support the argument that this portion of the sidewalk was wide enough to accommodate Ms. Thomas' mobility scooter. Consequently, the Court finds that genuine issues of material fact exist as to whether Fresh Market breached its duty of care to maintain a safe entrance into its store.

If the jury finds Fresh Market did breach its duty of care, the jury can then consider whether and to what degree, Ms. Thomas is at fault for her own injuries under the doctrine of comparative fault. *See McClung*, 937 S.W.2d. at 904 ("if properly raised as a defense, under our doctrine of comparative fault, a plaintiff's duty to exercise reasonable care for her own safety would be weighed in the balance.")

### b) Fresh Market's Duty of Care to Ms. Thomas in the Parking Lot

In the alternative, Fresh Market argues that the injury did not occur on the sidewalk; rather, it occurred in the parking lot where Fresh Market did not owe a duty of care to Ms. Thomas. In support of this position, Fresh Market relies on *Gladman v. Revco Disc. Drug Ctrs., Inc.*, 669 S.W.2d 677 (Tenn. Ct. App. 1984). In *Gladman,* the plaintiff parked in the parking lot of a shopping center and slipped on ice walking to the defendant's store. According to the lease between the defendant store (lessee) and the property owner (lessor), the property owner was to maintain the common areas including the parking lot. The *Gladman* Court held that defendant store owed no duty to the plaintiff to maintain the entire parking lot and that the responsibility to do so lay with the lessor. The *Gladman* Court granted defendant store summary judgment on plaintiff's negligence claim. *Id.* at 679. Likewise, Fresh Market asserts, it owed no duty to Ms. Thomas to maintain the safety of the parking lot (travel lanes).

This case is distinguishable from *Gladman*. Unlike the plaintiff in *Gladman*, Ms. Thomas does not contend that Defendant Fresh Market owed her a duty of care in the parking lot or in the travel lanes of the parking lot. Rather, Plaintiff alleges that Fresh Market owed her a duty of care to keep the sidewalk open and free of obstructions, that it breached that duty, and that, as a result, she was forced into the travel lanes in order to reach the entrance to the store.

Fresh Market's argument that it owed Plaintiff no duty of care in the parking lot ignores *why* Ms. Thomas was in the parking lot trying to cross the speed bump in her mobility scooter. A reasonable jury could find, when considering the facts in the light most favorable to Plaintiff, that Plaintiff was in the parking lot because Fresh Market obstructed the sidewalk designed to give patrons a safe route from Hobby Lobby to Fresh Market.

Though couched as an argument relating to duty, Fresh Market's argument is, essentially, that it was not *the cause in fact* of Ms. Thomas' injuries because the injuries occurred when she tried to go over the speed bump in the parking lot, a place where, Plaintiffs seem to agree, Fresh Market had no duty of care to Brenda Thomas. "[C]ause in fact establishes that the plaintiffs' injury would not have occurred 'but for' the defendant's conduct. . . ." *West v. East Pioneer Oil Co.*, 172 S.W.3d 545, 553 (Tenn. 2005) (citing *Kilpatick v. Bryant*, 868 S.W.2d 594, 598 (Tenn. 1993). Issues of causation are jury questions in the comparative fault analysis. *Haynes v. Hamilton Cnty*, 883 S.W.2d 606, 612 (Tenn. 1994). When considering the evidence in the light most favorable to Ms. Thomas, a reasonable jury could find that, but for the firewood on the sidewalk, Ms. Thomas would not have tried to cross the speed bump on her mobility scooter; rather, she would have entered Fresh Market safely via the sidewalk. Fresh Market is not entitled to summary judgment based on its argument that it was not responsible for what happened to Ms. Thomas in the parking lot.

### c) Stacked Firewood—The Proximate Cause of Plaintiff's Injuries

Finally, Fresh Market argues that the stacked firewood was not the proximate cause of Ms. Thomas' injuries. Proximate cause focuses on whether the law will extend responsibility for the defendant's conduct. *West*, 172 S.W.3d at 553 (citing *Kilpatrick v. Bryant,* 868 S.W.2d 594, 598 (Tenn.1993)). The Tennessee Supreme Court has a three-pronged test for proximate cause:

> (1) the tortfeasor's conduct must have been a "substantial factor" in bringing about the harm being complained of; and (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and (3) the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence.

*West*, 172 S.W.3d at 553 (citing *Haynes v. Hamilton County,* 883 S.W.2d 606, 612 (Tenn. 1994)). Moreover, "[t]here is no requirement that a cause, to be regarded as the proximate cause of an injury, be the sole cause, the last act, or the one nearest to the injury, provided it is a substantial factor in producing the end result." *West*, 172 S.W.3d at 553 (quoting *McClenahan v. Cooley*, 806 S.W.2d 767, 775 (Tenn. 1991)).

Fresh Market focuses on the last prong, asserting for the reasons Fresh Market previously articulated, that a person of ordinary intelligence and prudence could not have reasonably foreseen Ms. Thomas' injuries. For the reasons this Court has already discussed, the Court concludes that genuine issues of material fact exist as to whether Fresh Market's actions were a substantial factor in causing Ms. Thomas' injuries.

### 4. Negligence Claims Against DDR

The basis for Ms. Thomas' negligence claim against DDR centers on DDR's placement of the speed bump across the travel lanes from the curb of the sidewalk to the base of a light pole adjacent to the first parking space in the parking lot. [Doc. 1, Complaint ¶ 49]. Specifically, Ms. Thomas alleges,

> Defendant DDR breached their duty to provide an accessible entrance when it blocked the parking lot of the shopping center to handicapped persons who were attempting to enter Fresh Market from anywhere in the parking lot other than directly in front of Fresh Market.

[Doc. 1, Complaint, ¶ 49]. According to Ms. Thomas, the speed bump was the obstacle blocking her safe access into Fresh Market. [*Id.* ¶¶ 19-22, 40].

As previously indicated, travel lanes in the parking lot are designed for cars, not mobility scooters. Speed bumps are placed across the travel lanes to protect pedestrians (or scooters) by preventing cars from going too fast in the travel lanes. Automobile operators will try to "go around" speed bumps if they are not placed completely across the roadway. Pedestrians, including mobility-impaired shoppers, can avoid these speed bumps simply by taking a direct path across the travel lanes from the parking space to the sidewalk or vice versa. Upon reaching the sidewalk, shoppers should be able to safely access stores by moving in either direction on the sidewalk. Considering the evidence in a light most favorable to Plaintiffs, the Court finds there is no evidence to suggest that DDR breached its duty to provide a safe, accessible entrance to Fresh Market for shoppers—whether pedestrians or mobility-impaired shoppers.

Finally, after reviewing Ms. Thomas' claims against DDR, the Court is satisfied that she has not asserted any claim against DDR arising from Fresh Market's decision to stack firewood on the sidewalk. While counsel does discuss that issue in the summary judgment briefing, the Court declines to permit a claim that was not raised in the complaint to be asserted for the first time in the summary judgment papers. Moreover, even if the Court were to consider the claim properly raised, summary judgment in favor of DDR on this claim would still be appropriate. As DDR correctly asserts in its brief [Doc. 71 at 2], there is no evidence in the record to indicate that DDR knew or should have known that Fresh Market had obstructed the sidewalk with firewood on the

day when the incident occurred. Summary judgment as to the negligence claims against DDR is appropriate.

### 5. Loss of Consortium Claims

Gary Thomas, Brenda Thomas' husband, asserts a claim for loss of consortium against each Defendant. A "loss of consortium claim [of a spouse] is dependent upon the negligent injury of the other spouse who has the primary tort cause of action." *Tuggle v. Allright Parking Sys., Inc.*, 922 S.W.2d 105, 109 (Tenn. 1996). For the reasons set forth above, the Court will deny Fresh Market's motion for summary judgment and will grant DDR's motion for summary judgment with respect to Mr. Thomas' loss of consortium claims.

## IV. CONCLUSION

For the reasons stated in this memorandum opinion, the Court finds as follows:

1. Defendant Fresh Market's motion for summary judgment as to Ms. Thomas' negligence *per se* claims against Fresh Market will be **GRANTED**.

2. Defendant Fresh Market's motion for summary judgment as to Ms. Thomas' negligence claim and Mr. Thomas' loss of consortium claim against Fresh Market will be **DENIED**. These claims remain for trial

3. Defendant DDR's motion for summary judgment as to Ms. Thomas' negligence claim and negligence *per se* claim against DDR, as well as Mr. Thomas' loss of consortium claim against DDR will be **GRANTED**. All claims against DDR will be **DISMISSED**.

**ENTER.**

/s/ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE